IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

**TEMIRIA THOMAS, on behalf of herself and her minor child, A.W.,**

    Plaintiffs,

v.

**WIL COPE**,

    Defendant.

Civil Action No. 7:20-CV-14 (HL)

**ORDER**

Plaintiff Temiria Thomas filed this pro se lawsuit on behalf of herself and A.W., a minor child, pursuant to 42 U.S.C. § 1983 claiming that Defendant Wil Cope violated their rights under the Fourth Amendment when he arrested and detained A.W. Plaintiffs contend that Defendant obtained a warrant to search and arrest A.W. under false pretenses and without probable cause. Presently pending before the Court is Defendant's Motion for Summary Judgment. (Doc. 18). The Court notified Plaintiff of Defendant's motion. (Doc. 19). Plaintiff filed no response.[1] After reviewing the pleadings, briefs, affidavits, and other evidentiary

---

[1] Plaintiffs have not communicated with the Court since the filing of the parties' proposed scheduling and discovery order in October 2020. (Doc. 10). Plaintiffs have declined to take an active role in pursuing their claims. On April 29, 2021, Defendant filed a Motion to Dismiss. (Doc. 16). Defendant outlined numerous attempts to depose Plaintiffs. (Id. at ¶¶ 9, 11-13, 17-19, 22-25). Based on Plaintiffs' failure to appear for their scheduled depositions, Defendant moved the Court to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure

materials presented, the Court concludes that there are no genuine issues of material fact as to any claim and **GRANTS** Defendant's motion.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

Agnes Robey ("Robey") is a P.O.S.T. certified law enforcement officer employed as an investigator by the City of Quitman Police Department. (Robey Aff., ¶ 3). On November 17, 2019, Robey received a telephone call from J.D., a male student at Brooks County High School. (Id. at ¶ 4; Ex. A). Robey was familiar with J.D. (Id.). She previously investigated an incident involving a video of J.D. engaging in sexual relations with a minor female. (Id.). J.D. was also a minor at the time the "Original Video" was created. (Id.).

J.D. informed Robey that A.W., a 14-year-old female student at Brooks County High School, created a new video (the "Second Video") that included portions of the Original Video. (Id. at ¶ 5). J.D. denied playing a role in creating the Second Video. J.D. sent Robey a copy of the Second Video. (Id. at ¶ 7). She confirmed the Second Video contained a portion of the Original Video and depicted two minors engaged in a sexual act. (Id.).

---

37(b)(2)(C). (Doc. 16). While the Court agrees that the sanction of dismissal would be appropriate under the circumstances, the Court believes the better course of action is to rule on the merits of Plaintiffs' remaining claims. Because the Court herein concludes that Defendant is entitled to judgment as a matter law, the Court **DENIES as moot** Defendant's motion to dismiss.

2

After reviewing the Second Video, Robey attempted to contact A.W. (Id. at ¶ 8). A.W.'s mother, Plaintiff Temiria Thomas, answered the phone. (Id.). Robey requested that Plaintiff bring A.W. to the police station to discuss the video. (Id.). Robey arranged to meet with Plaintiff and A.W. at 5:00 p.m.. (Id.). Later that day, Lydia Giddens, A.W.'s grandmother, called Robey to inquire why she wanted to speak with A.W. (Id.). The following day, Giddens appeared at Robey's office to state that A.W. would answer no questions in relation to the Second Video. (Id.).

Capt. Willie C. Clemons, a member of the police department for the Brooks County School System, contacted Robey on November 19, 2019. (Id. at ¶ 10; Ex. A). Capt. Clemons stated that he and Rhonda Goodson, the assistant principal at Brooks County High School, had additional information concerning the Second Video. (Id.). According to Capt. Clemons, A.W. created the video. (Id.). The video was then distributed to several students in the school cafeteria via AirDrop.[2] (Robey Aff., Ex. A).

After speaking to Capt. Clemons, Robey went to Brooks County High School to meet with Goodson and Lindsey Herring, a dance teacher at the school. (Robey Aff., ¶ 11). Goodson called D.Y., a female student depicted in the Second Video, to the office. (Id.). D.Y. did not engage in any inappropriate

---

[2] "AirDrop is a proprietary ad hoc service in Apple Inc.s' iOS and macOS operating systems . . . which can transfer files among supported . . . devices by means of close-range wireless communication." https://en.wikipedia.org/wiki.AirDrop.

conduct in the video. (Id. at ¶ 12). Because the student did not have a parent or guardian present, Goodson posed the questions about the video, not Robey. (Robey Aff., Ex. A). D.Y. stated that A.W. created the video and sent it to her. (Robey Aff., ¶ 13). D.Y. claimed the only person she shared the video with was her mother. (Robey Aff., Ex. A).

Herring was able to identify the other students in the video. (Id.). Herring also discussed her knowledge of the students' use of social media, including Snapchat[3] and TicTok.[4] (Id.). Herring was able to confirm through an examination of the Snapchat account that A.W. created the video and then deleted the video about ten minutes later. (Id.).

Goodson then called A.W. to the office. (Robey Aff., ¶ 14). Robey requested that Joseph McKinnon, an Assistant District Attorney in the juvenile division, participate in the meeting. (Robey Aff., Ex. A). McKinnon agreed to be present for the meeting provided Robey did not ask any questions of A.W. since her mother was not present. (Id.). Robey agreed. (Id.). A.W. admitted to Goodson that she created the video and sent it to D.Y. (Robey Aff., ¶ 15). A.W. accused D.Y. of airdropping the video to other students in the cafeteria. (Id.).

---

[3] "Snapchat is a popular messaging app that lets users exchange pictures and videos (called snaps) that are meant to disappear after they're viewed." https://phys.org/news/2018-06-snapchat.html.
[4] "TikTok is an app for making and sharing short videos." https://www.nytimes.com/2019/03/10/style/what-is-tik-tok.html.

Following the meeting with A.W., Goodson informed Robey that Ashlee Gruno, another school employee, met with A.W. and Plaintiff the day before on November 18, 2019. (Id. at ¶ 16). Robey obtained a written statement prepared by Gruno in connection with that meeting. (Id.; Ex. B). According to Gruno's statement, Plaintiff attempted to place blame for the video on a male student. (Robey Aff., Ex. B). But after being asked to explain her involvement, A.W. admitted that she and another girl made the video. (Id.).

Robey learned that A.W. created the video in her home. (Robey Aff., ¶ 17). On November 20, 2019, Robey discovered that A.W.'s home was in Brooks County but outside the Quitman city limits. (Id.). Accordingly, she contacted Defendant Wil Cope, an investigator with the Brooks County Sheriff's Office and transferred the case to Brooks County. (Id.). Robey detailed her findings to Defendant. (Id.; Cope Aff., ¶¶ 4-5).

Defendant conducted an independent investigation and verified the information provided by Robey. (Cope Aff., ¶ 6; Ex. A). On December 4, 2019, Defendant appeared before Judge Luke Mitchell, who presides over both the Brooks County State Court and Juvenile Court. (Cope Aff., ¶ 7). After being placed under oath, Defendant outlined the information provided by Robey and confirmed through his own investigation about A.W.'s involvement with the creation and distribution of the Second Video. (Id. at ¶ 8). Judge Mitchell issued

an arrest warrant for A.W. for the offense of Sexual Exploitation of a Minor. (Cope Aff., Ex. B).

Defendant met with Judge Mitchell again on December 9, 2019. (Cope Aff., ¶ 9). Defendant presented the judge an Affidavit and Application for a Search Warrant. (Cope Aff., Ex. C). The affidavit outlines Defendant's training and experience and sets forth the history of the investigation. (Id.). The affidavit further identifies the property to be searched as 316 Perdue Road, a duplex with grey siding where Plaintiff, a black female, and her juvenile daughter A.W. reside. (Id.). The property to be seized is listed as follows:

> Cell phones that are being used by [A.W.] that contain text messages, in-going and outgoing missed calls, call-logs, emails, voicemails, pictures, notes, Facebook, Snapchat, Tik Tok, [and] videos which may include evidence related to the violation of Georgia Law(s):
>
> O.C.G.A. [§] 16-12-100 Sexual [e]xploitation of children
>
> O.C.G.A. [§] 16-12-100.2 Computer or electronic pornography

(Id.). After reviewing the application, Judge Mitchell signed the warrant authorizing seizure of A.W.'s cell phone. (Cope Aff., Ex. D).

Plaintiff filed this lawsuit on behalf of herself and A.W. on January 28, 2020. (Doc. 1). After conducting a preliminary screening of Plaintiffs' Complaint pursuant to 28 U.S.C. § 1915(e), the Court dismissed Plaintiffs' claims against Sheriff Mike Dewey, Brooks County, Georgia, and Brooks County Board of

Commissioners for failure to train and supervise and negligent hiring and training. (Doc. 4). The Court also dismissed Plaintiffs' claims against Defendant for false arrest and false imprisonment, conspiracy, and intentional infliction of emotional distress. The Court permitted Plaintiffs' Fourth Amendment claims relating to the issuance of the arrest and search warrants to proceed for further factual development. Defendant now moves for summary judgment as to those claims.

## II.   SUMMARY JUDGMENT STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it

believes demonstrate the absence of a genuine issue of a material fact." Celotex, 477 U.S. at 323 (internal quotation omitted). If the movant meets this burden, the burden shifts to the party opposing summary judgment to go beyond the pleadings and to present specific evidence showing that there is a genuine issue of material fact, or that the movant is not entitled to judgment as a matter of law. Id. at 324-26. "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999). But, when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The moving party must meet its burden even when, as here, the non-moving party fails to respond to the motion for summary judgment. Courts "cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion." United States v. One Piece of Real Prop. Located at 5800 SW 7th Ave., Miami, Fla., 363 F.3d 1099, 1101 (11th Cir. 2004). In considering the merits of the unopposed motion, a court

> need not sue sponte review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials. At the least, the district court must review all of the evidentiary materials submitted in support of the motion for summary judgment.

Id. The court cannot simply accept the facts stated in the moving party's statement of material facts as true; rather, the court must review the movant's citations to the record and confirm that there are no genuine issues of material fact. Id. at 1103 n.6.

### III.   DISCUSSION

Plaintiffs assert claims against Defendant pursuant to § 1983 based on alleged violations of their Fourth Amendment rights arising from the arrest and detention of A.W. as well as from the seizure of her cell phone. Plaintiffs allege that Defendant obtained warrants to search and seize A.W. based on false information. Defendant argues that he is entitled to qualified immunity because the information set forth in the warrant application was accurate and articulated probable cause for issuing the warrants.

#### A.   Issuance of Warrant

"A government official who is sued under § 1983 may seek summary judgment on the ground that he is entitled to qualified immunity." Crosby v. Monroe Cnty., 394 F.3d 1328, 1332 (11th Cir. 2004). Qualified immunity offers complete protection for government officials sued in their individual capacities

"insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Accordingly, qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011) (internal quotation marks omitted).

To receive qualified immunity, the official first must "prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks omitted). Here, there is no dispute that Defendant was acting within his discretionary authority when he arrested A.W.. See Crosby, 394 F.3d at 1332 ("[M]aking an arrest is within the official responsibilities of a sheriff's deputy."); Wood v. Kesler, 323 F.3d 872, 877 (11th Cir. 2003) (concluding that a state trooper was clearly acting within the scope of his discretionary authority when he charged and arrested the plaintiff). Once the official establishes that he was engaged in a "discretionary function," the burden shifts to the plaintiff "to show that the defendant is not entitled to qualified immunity." Holloman ex rel.

Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004) (emphasis in original). To demonstrate that the official is not entitled to qualified immunity, the plaintiff must show (1) that the official violated a constitutional right; and (2) that the constitutional right violated was "clearly established" at the time of the alleged violation. Saucier v. Katz, 533 U.S. 194, 201 (2001); Holloman, 370 F.3d at 1264.

Plaintiffs' Fourth Amendment claims fail because Plaintiffs cannot establish that Defendant violated a constitutional right. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. It also provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be searched." Id. "Generally, a search is reasonable under the Fourth Amendment when supported by a warrant or when the search fits within an established exception to the warrant requirement." United States v. Prevo, 435 F.3d 1343, 1345 (11th Cir. 2006).

Plaintiffs allege in their Complaint that Defendant violated the Fourth Amendment by presenting a warrant affidavit containing false information. A warrant "may be voided if the affidavit supporting the warrant contains deliberate falsity or reckless disregard for the truth." Dahl v. Holley, 312 F.3d 1228, 1235 (11th Cir. 2002); see also Kingsland v. City of Miami, 382 F.3d 1220, 1232 (11th

11

Cir. 2004) ("[F]alsifying facts to establish probable cause is patently unconstitutional."). In Franks v. Delaware, the Supreme Court explained that while statements made in a warrant affidavit may not be true, they nevertheless must be "'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true." 438 U.S. 154, 166 (1978); see United States v. Martin, 615 F.2d 318, 327-29 (5th Cir. 1980) (extending the holding of Franks to cases involving arrest warrants). "Thus, a police officer may be held liable under 42 U.S.C. § 1983 for submitting an application for an arrest warrant that contains false information." Holmes v. Kucynda, 321 F.3d 1069, 1083 (11th Cir. 2003); see also Malley v. Briggs, 475 U.S. 335, 345 (1986) (explaining that even if a magistrate approves a warrant, the officer applying for the warrant may be liable for a Constitutional violation if the evidence provided to the magistrate was insufficient to establish probable cause). But to rise to the level of a constitutional violation, that information must be so clearly material to a determination of probable cause "that every reasonable law officer would have known that [its] omission [or inclusion] would lead to a search [or seizure] in violation of federal law." Haygood v. Johnson, 70 F.3d 92, 95 (11th Cir. 1995).

The Eleventh Circuit has set forth a two-step inquiry to determine whether a misstatement in a warrant application amounts to a Fourth Amendment violation. Paez v. Mulvey, 915 F.3d 1276, 1287 (11th Cir. 2019). First, the court

must "ask whether there was an intentional or reckless misstatement or omission." Id. Second, the court should examine "the materiality of the information by inquiring whether probable cause would be negated if the offending statement was removed or the omitted information included." Id. (citing United States v. Kirk, 781 F.2d 1498, 1502 (11th Cir. 1986) ("[W]e must consider: (1) whether the alleged misstatements in the affidavit were made either intentionally or in reckless disregard for the truth, and, if so, (2) whether, after deleting the misstatements, the affidavit is insufficient to establish probable cause.")).

Plaintiffs' challenge to the validity of the arrest and search warrants fails because Plaintiffs have not identified any intentionally misleading statements or omissions in the oral attestation made by Defendant to Judge Mitchell or in Defendant's warrant affidavit. Even if Plaintiffs could identify a misstatement, Defendant still is entitled to qualified immunity because the affidavit otherwise establishes probable cause to believe that A.W. violated O.C.G.A.§ 16-12-100(b), which sets forth the elements of the crime of Sexual Exploitation of a Minor.

As the Supreme Court has explained, "the . . . standard of objective reasonableness . . . defines the qualified immunity accorded an officer whose request for a warrant allegedly caused an unconstitutional arrest. Only where the

warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost." Malley v. Briggs, 475 U.S. 335, 344-45 (1986) (citation omitted). "Put another way, if the affidavits (including the omitted information) would have demonstrated even arguable probable cause—that a reasonable officer could have believed an offense was committed—then the officers are entitled to qualified immunity." Paez, 915 F.3d at 1288 (emphasis in original) (citation omitted).

Here, Defendant has established not only arguable probable cause but probable cause for the arrest of A.W. and the seizure of her cell phone. Both Defendant's oral testimony and his written affidavit described sufficient information to permit a reasonable officer to believe that A.W. engaged in conduct that violated Georgia law. "Although the lawfulness of a warrantless arrest turns on whether the arresting officer had probable cause, . . ., the lawfulness of seizures pursuant to legal process turns on the validity of the legal process itself." Williams v. Aquirre, 965 F.3d 1147, 1162 (11th Cir. 2020) (citation omitted). An officer "ordinarily does not violate the Fourth Amendment when he executes a facially valid arrest warrant, regardless of whether the facts known the officer support probable cause." Id. Accordingly, courts are instructed to examine whether "the judicial officer issuing such a warrant [was] supplied with

14

sufficient information to support an independent judgment that probable cause exists for the warrant." Whiteley v. Warden, 401 U.S. 560, 564 (1971).

Georgia law makes it a crime "for any person knowingly to create, reproduce, . . ., distribute, give, exhibit, or possess with intent to sell or distribute any visual medium which depicts a minor or a portion of a minor's body engaged in any sexually explicit conduct." O.C.G.A. § 16-12-100(b)(5). The law further provides that it is unlawful "for any person knowingly to possess or control any material which depicts a minor or a portion of a minor's body engaged in any sexually explicit conduct." O.C.G.A. § 16-12-100(b)(8).

Defendant provided Judge Mitchell with a detailed outline of the investigation conducted by Robey and himself. That investigation revealed that A.W. admittedly created a video depicting minors engaging in sexually explicit acts. The investigation additionally established that the video was distributed through social media. This information was sufficient to permit Judge Mitchell to make an independent judgment that probable cause existed to issue warrants for the arrest of A.W. and the seizure of her cell phone.

Reviewing the evidence in the light most favorable to Plaintiffs, Plaintiffs have not established a Fourth Amendment violation. Defendant accordingly is entitled to qualified immunity as to Plaintiffs' § 1983 claim for unlawful search and seizure.

### B. Pretrial Detention

Plaintiffs allege that A.W. was unlawfully detained at Brooks County High School and at the Brooks County Detention Center. Plaintiffs argue that A.W.'s detention was unreasonable because the warrant ordering A.W.'s arrest was obtained based on false information and was not supported by probable cause. Under federal law, the Fourth Amendment permits a claim for unlawful pretrial detention if the court's probable cause order was based solely on fabricated evidence. Manuel v. City of Joliet, 137 S.Ct. 911, 918-19 (2017) ("[A] claim challenging pretrial detention [falls] within the scope of the Fourth Amendment."). The Fourth Amendment guarantees "a fair and reliable determination of probable cause as a condition for any pretrial restraint." Gerstein v. Pugh, 420 U.S. 103, 125 (1975). An individual detained prior to trial without a proper finding of probable cause may seek relief under "the Fourth Amendment's protection against unfounded invasions of liberty." Id. at 112.

As established above, there was probable cause to issue the warrants at issue in this case. Accordingly, no Fourth Amendment violation arose from A.W.'s detention. Absent a constitutional violation, Defendant is shielded by qualified immunity as to Plaintiffs' § 1983 claims for unlawful pretrial detention.

## VI. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment. (Doc. 18). The Court **DENIES as moot** Defendants' Motion to Dismiss. (Doc. 16).

**SO ORDERED**, this the 22nd day of October, 2021.

*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

aks